## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Manuel Martinez-Fuentes,

    Petitioner,

v.

Warden Scott Peter Fisher,

    Respondent.

Civil No. 10cv00988 PJS/JJK

**REPORT AND RECOMMENDATION**

Manuel Martinez-Fuentes, #30918-079 C, Sandstone FCI, POB 1000, Sandstone, MN 55072, *pro se*.

Mary J. Madigan and Gregory G. Brooker, Assistant United States Attorneys, counsel for Respondent.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before the Court on the Petitioner's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1). The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, this Court recommends that the Petition be denied, and this action be dismissed with prejudice.

## BACKGROUND

Petitioner is a federal inmate currently incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"), and is serving a 262-month sentence, with five years supervised release, imposed by

the United States District Court for the Eastern District of Texas following a conviction for Conspiracy to Distribute and Possess With Intent to Distribute 150 Kilograms or More of Cocaine in violation of 21 U.S.C. § 846.  Petitioner has a projected release date of December 19, 2024, via good conduct time release.

Petitioner filed this habeas petition pursuant to 28 U.S.C. § 2241 to contest a disciplinary action in which he was found guilty of possession of intoxicants and sanctioned with 14 days of disciplinary segregation and the disallowance of 13 good-conduct-time days.  (Doc. No. 1 at 7.)  The incident leading to the disciplinary sanction is described in the staff incident report by Lieutenant Steven Reiser as follows:

> 11.  Description Of Incident (Date: 8/06/09 Time: 9:30 a.m. Staff become aware of incident) On August 06, 2009, at approximately 9:20 a.m., I was conducting sanitation inspections in C-Unit.  I opened the locked locker in cube C08N-061, belonging to inmate MARTINEZ #30918-079, where I found a plastic container labeled Home Brand Strawberry jelly. Upon opening the container I found a redish liquid, which smelled like a homemade intoxicant.  The container was taken to the Lieutenant Office, at which time the substance in the container was tested utilizing the ALCO Sensor III.  The substance tested positive with a reading of .999.  Inmate Martinez was escorted to the Special Housing Unit.

(Doc. 10-1 at 14 of 27.)  According to the investigating lieutenant, Petitioner made the following statement to him concerning the strawberry squeeze jelly bottle:  "Yes it was mine.  I didn't know it was bad.  I had it for a long time to use with peanut butter, but haven't used it in a long time."  (*Id* at 12 of 27.)  At the initial unit disciplinary hearing, Petitioner stated that he did not intend to make intoxicants and that he had not used the jelly in a long time, and it fermented.

2

(*Id.* at 13 of 27.)  Then he was referred to a discipline hearing officer for disposition and appropriate sanctions because of the severity of the offense.[1]

The DHO held a hearing on August 11, 2009.  According to the report, the DHO considered all the evidence, including the statement of the reporting staff member quoted above, the admission of Petitioner that the jelly bottle belonged to him, and the ALCO Sensor testing results.  (*Id.*)  The DHO noted that the weight of Petitioner's denial of committing the offense of possessing intoxicants was greatly lessened in the DHO's eyes because of the following facts:

> 1. ) The inmate's admission to having knowledge of the container and it's [sic] placement in his assigned cube area.
>
> 2.) The inmate's current occupation of the assigned cube and his good understanding of cube sanitation standards.  Those standards require each inmate, while occupying their assigned cube, to maintain a high level of control of the all personal items left in the unsecured areas of the cube, being placed in or taken out of locker, and the entire assigned cube area which is subject to inspection at all times, and
>
> 3.) The inmate's responsibility to continuously monitor his entire cube area for excess, unusable, unknown, or unauthorized items.  Additionally, it is the inmate's responsibility to bring these concerns immediately to the attention of the unit officer.
>
> As the inmate admitted to having knowledge of the container, and it's [sic] location, but claiming no knowledge of it's [sic] contents which held the liquid that tested positive for intoxicants, the inmate's denial has no weight and does not support the fact he did not have knowledge of or possess the intoxicants as charged.

---

[1]   The disciplinary hearing officer is an independent hearing officer who is responsible for conducting institution discipline hearings and who may impose appropriate sanctions for incidents of inmate misconduct.  28 C.F.R. § 541.16.

(*Id* at 13 of 27.)  The DHO concluded "there is some evidence to support you committed the prohibited act of code # 222, 'Possession of Intoxicants'." (*Id.*) The DHO sanctioned Petitioner with 14 days disciplinary segregation, and disallowed 13 days of good conduct time.  (*Id.*)  Petitioner contends that there was no credible evidence to support the DHO's decision that he committed the prohibited conduct of possessing intoxicants and he was not provided the due process required in an inmate disciplinary proceeding.

## STANDARD OF REVIEW

The decision of a prison disciplinary officer is entitled to considerable deference by a reviewing court.  Assuming the other requirements of due process are met, the decision of the prison discipline officer should be upheld if there is "some evidence" to support the decision.  *Superintendent v. Hill*, 472 U.S. 445, 457 (1985); *Gomez v. Graves*, 323 F.3d 610, 612 (8th Cir. 2003); *Goff v. Dailey*, 991 F.2d 1437, 1442 (8th Cir. 1993).  The Supreme Court has made clear that:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board.

*Hill*, 472 U.S. at 455-56 (emphasis added).  *See also Louis v. Dep't of Correctional Servs. of Neb.*, 437 F.3d 697, 700 (8th Cir. 2006).

The standard of review is highly deferential because "[t]he federal courts are not part of the appellate process for prison disciplinary proceedings." *Toombs*

4

*v. Hicks*, 773 F.2d 995, 997 (8th Cir. 1985) (citing *Courtney v. Bishop*, 409 F2d 1185, 1187 (8th Cir. 1969)).  Once a reviewing court determines that there is "some evidence" to support the finding of the DHO, the court is directed to reject the evidentiary challenge by a petitioner and uphold the DHO's finding.  *Hill*, 472 U.S. at 457; *Goff*, 991 F.2d at 1442.[2]

I. **SUFFICIENCY OF EVIDENCE ON THE MERITS**

Petitioner argues that there was insufficient evidence for the DHO to sanction him.  First, he contends that the testing procedures underlying his offense were so fundamentally flawed that the testing of the liquid should not have been given any weight by the DHO.  To that effect, he cites the following deficiencies in the testing method:

1. The Bureau of Prisons ("BOP") claims they train their correctional officers to use the Alco-Sensor based on a "brochure", see PS6590.07(2)(6);

2. The BOP failed to provide this court with calibration logs demonstrating the unit was properly calibrated, pursuant to *Id*.

3. The BOP failed to provide this Court with the alcohol test logs required by their own policy, *Id*.

4. The BOP failed to *re-test* the purported *pure alcohol* grape jelly possessed by the petitioner as per policy, *Id*.

---

[2] Generally, a petitioner must exhaust his administrative remedies before filing his habeas action.  Here, Respondent does not raise as a defense Petitioner's failure to exhaust administrative remedies, noting that "[a]lthough Petitioner has not exhausted his administrative remedies, the BOP acknowledges that there may [be] cause for the Court to excuse him from doing so and to decide this petition on the merits." (Doc. No. 9 at 8 of 16.)

> 5. The is *no* FCI Sandstone Institution Supplement, as required by their own program statement, *Id*, regarding local implementation of the program of alcohol testing.

(Doc. No. 11 at 4 of 8.) Petitioner further argues that "common sense" establishes that "without more, an inmate cannot possibly or plausibly manufacture 99% pure alcohol inside the walls of FCI Sandstone, without professional distillery equipment, and that the results were wrong, that they should have at least retested the grape jelly." (*Id.*) This Court disagrees.

At a minimum, there is "some evidence" to support the DHO's conclusion that Petitioner possessed an intoxicant in violation of prison rules. Petitioner admitted possessing the strawberry jelly container with the red liquid inside. When Lieutenant Reiser opened the container he smelled an odor "like a homemade intoxicant." (Doc. No. 10-1 at 14 of 27.) The liquid in the container was tested using an ALCO Sensor III and it tested positive for alcohol "with a reading of .999." (*Id.*) Although Petitioner argues that the ALCO Sensor III is a breathalyzer and suggests that it makes no sense to use a breathalyzer to analyze the content of a liquid, BOP regulations dealing with the detection of the illegal production or use of alcohol in federal prisons specifically require the use of the Alco-Sensor instrument for testing suspect liquids. (Doc. No. 10-1 at 27 of 27.) ("Testing Suspect Liquids. The Alco-Sensor instrument shall be used to test liquids suspected of containing alcohol following procedures outlined in the company brochure. Liquids with a test of .02 or higher shall be considered

positive for alcohol.") Petitioner presented no evidence that the Alco-Sensor equipment cannot measure the alcohol content of a liquid.

Petitioner's arguments about deficiencies in the testing methods go to the weight of the evidence and, given the highly deferential standard of review, provide no basis for this Court to overturn the DHO's decision. And while Petitioner argues that it was impossible for him to have 99% pure alcohol in the prison because there is no professional distillery equipment there, this Court must defer to the findings of prison officials, who have much more expertise and knowledge about the prisoners' ability to smuggle in or produce contraband articles in prison. In sum, there was ample evidence to support the DHO's conclusion that Petitioner violated the policy prohibiting the possession of intoxicants.

## II.  DUE PROCESS

Petitioner also contends that he was denied due process in this disciplinary matter. He complains that: (1) he was not provided with an incident report within 24 hours of the prison staff's discovery of the container with alcohol on August 6, 2009; (2) that the Unit Discipline Committee ("UDC") hearing was not held within three days; (3) he was not provided with the UDC's decision referring the matter to the DHO for possible disciplinary action by the end of the next work day after the UDC hearing; (4) he did not receive a 24-hour advance written notice of the DHO hearing; (5) the DHO hearing did not take place within three working days

7

of referral from the UDC; and (6) he did not get a copy of the DHO Report within ten days of the hearing, which was held on August 11, 2009.

Due process applies to prison disciplinary proceedings through the Fifth Amendment, which protects against arbitrary actions of the government affecting an individual's life, liberty or property interest. Because they are not criminal trials, however, prison disciplinary proceedings need not provide all the procedural and substantive protections afforded a defendant in a criminal proceeding. *Wolff v. McDonnell*, 418 U.S. 539 (1974).

*Wolff* sets forth five elements required to satisfy procedural due process in the context of a prison disciplinary hearing: (1) advanced written notice of the claimed violation at least 24 hours before the disciplinary hearing; (2) a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken; (3) an opportunity to "call witnesses and present documentary evidence in [the inmate's] defense when permitting [the inmate] to do so will not be unduly hazardous to institutional safety or correctional goals"; (4) the ability to seek the aid of a fellow inmate or assistance from the prison staff where an inmate is illiterate or where "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case"; and (5) an impartial disciplinary hearing body. *Id.* at 564-71.

Each of the five *Wolff* elements was met here. Petitioner received advance written notice of the claimed violation on August 11, 2009, 15 days

before the disciplinary hearing. (Doc. No. 10-1.) The DHO issued a written statement, after the disciplinary hearing, describing the evidence relied upon and the reasons for the disciplinary action taken. (Doc. No. 10-1 at p. 12 of 27.) The notice of the disciplinary hearing, provided to Petitioner 15 days before the hearing occurred, notified Petitioner that he would have the "right to call witnesses at the hearing and to present documentary evidence in your behalf; provided calling your witnesses will not jeopardize institutional safety." Petitioner was also notified, 15 days before the hearing, that he was entitled to have a full-time staff member represent him at the hearing. (*Id.*) The DHO was "an independent discipline hearing officer who was responsible for conducting institutional discipline hearings and who imposes appropriate sanctions for incidents of inmate misconduct." 28 C.F.R. § 541.16. There is no evidence that the DHO at Petitioner's hearing was not impartial. Thus, all of the *Wolff* due process elements were met.

Although these core elements of *Wolff* were met here, Petitioner nonetheless contends that he is entitled to habeas relief because the BOP violated some of its own regulations in the processes employed in his case. As noted above, he claims that he was not provided with a copy of the incident report within 24 hours of the time when the prison staff became aware of the contraband container; the UDC hearing was not held within three days of the incident; he was not provided with the UDC decision within 24 hours; he did not receive 24-hour advance written notice of the DHO hearing; the DHO hearing did

not take place within three days of the referral from the UDC; and he did not get a copy of the DHO decision within ten days of the DHO hearing.

Respondent contests these claims, arguing either that they are untrue or that there was no violation of the BOP regulations. For example, Respondent states that the BOP regulation is that the inmate should <u>ordinarily</u> be provided a copy of the charges against him within 24 hours of the time staff became aware of the inmate's infraction but there is no absolute deadline. The UDC hearing, says Respondent, was held on August 11, 2009, within three business days of the August 6 incident in compliance with BOP policy. After the UDC hearing, Petitioner was provided with the written notice of the charges that the UDC referred to the DHO and he was given a comprehensive and detailed explanation of his rights at the DHO hearing, including the right to have a staff representative, to call witnesses, and to present evidence. This notice was provided to Petitioner 15 days before the DHO hearing. There is no BOP policy that requires that the DHO hearing must be held within three days of the UDC referral. As far as the receipt of the DHO's decision, BOP policy states that inmates <u>ordinarily</u> will receive a copy of the DHO report within ten days, but there is no absolute deadline.

Even if Petitioner could establish that some of the BOP regulations were not met here, this would not entitle him to habeas relief. Habeas relief is only available for a violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c), 2254(a). "[T]here is no federal constitutional liberty

interest in having . . . prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). In fact, any liberty interest "must be an interest in the nature of the prisoner's confinement, 'not an interest in the procedures by which the state believes it can best determine how he should be confined.'" *Id.* (quoting *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)).

The focus, then, must be on the potential due process constitutional violation, not on compliance with BOP regulations. That is not to say that BOP's compliance with its regulations is unimportant; on the contrary, a violation of the BOP regulations might be an important factor in determining whether Petitioner's due process rights were abridged. But in the end, to be entitled to habeas relief, an inmate must establish a violation of the *Wolff* due process standards. And that is why courts have consistently refused to find due process violations based solely on prison staff's non-compliance with BOP regulations governing disciplinary process. *See Stanko v. Rios*, 2009 WL 1066021 (D. Minn. 2009) ("Even if prison officials took over twenty-four hours to advise Stanko about the charges, § 541.15(a) does not require notice within this period. The regulation only provides that notice "ordinarily" shall be during this time, which indicates notice during this period is not mandatory. . . And due process only requires that a prisoner receive notice of charges twenty-four hours *before* the disciplinary hearing . . . For these reasons, § 514.15 also does not grant Stanko relief here) (internal citations omitted) (citing *Sinde v. Gerlinski,* 252 F. Supp. 2d 144, 149

11

(M.D. Pa. 2003) (finding no prejudice where inmate received the incident report eight months after its preparation because he received it more than 24 hours in advance of the disciplinary hearing)); *Barner v. Williamson*, 233 Fed. Appx. 197, 199 (3d Cir. 2007) (stating that inmate had not shown that § 541.15(a) creates a liberty interest or that its violation "necessarily abridges the constitutional protections established in *Wolff*"); *Homen v. Hasty*, 229 F. Supp. 2d 290, 296 (S.D.N.Y. 2002) (finding no concerns where prisoner received notice about charges more than four months after an incident).  Here, the *Wolff* due process requirements were satisfied.   Accordingly, Petitioner is not entitled to habeas relief, and this Court recommends that his Petition be dismissed with prejudice.

## RECOMMENDATION

Based upon the above, and upon all the records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. The Petition for a Writ of Habeas Corpus (Doc. No. 1) be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.


Dated:  April 5, 2011

             *s/ Jeffrey J. Keyes*
             JEFFREY J. KEYES
             United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 19, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to

comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.